IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARLENE RIVERA-SOTO,

    Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 24-1346 (MEL)

**OPINION AND ORDER**

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Pending before the Court is Marlene Rivera-Soto's ("Plaintiff") appeal from the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 1. On October 13, 2020, Plaintiff filed an application for Social Security benefits, alleging that she initially became unable to work due to disability on August 21, 2019 ("the onset date"). Tr. 15. Before the onset date, Plaintiff worked as an intensive nurse at a hospital. Tr. 24. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2025. Tr. 17. Plaintiff's disability claim was denied on February 23, 2021, and upon subsequent reconsideration on June 2, 2021. Tr. 15. Thereafter, Plaintiff requested a hearing on June 17, 2021, which was held telephonically on December 15, 2022, before Administrative Law Judge Livia Morales (the "ALJ") "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Tr. 38-59. Plaintiff appeared and was represented by counsel. *Id*. On February 1, 2023, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 15-26.

After review of the ALJ's decision, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-8. Plaintiff filed a complaint on August 4, 2024, challenging the ALJ's February 1, 2023, decision. ECF No. 1. The Commissioner opposed Plaintiff's challenge, and both parties have filed supporting memoranda. ECF Nos. 12, 14.

## II.    LEGAL STANDARD

### A.  Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. *See generally* 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed

3

to the next step. *See* 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. *See* 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. *See* 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. *See* 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's Residual Functional Capacity ("RFC"). *Id*. The claimant bears the burden of providing evidence to establish how her impairments limit her RFC. *See* 42 U.S.C. § 423(d)(5)(A); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). "An ALJ cannot rely on raw medical data; rather, she must look to physician's opinions to translate that evidence into functional terms." *Valentín-Rodríguez v. Comm'r of Soc. Sec.*, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014). If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R.

§ 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.    THE ALJ'S DECISION

In her decision dated February 1, 2023, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through March 31, 2025. Tr. 17. At step one of the sequential evaluation processes, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset date of August 21, 2019, through the date last insured. *Id*. At step two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, bipolar disorder, depressive disorder, and anxiety disorder." *Id*. The Plaintiff also had non-severe impairments including but not limited to the following: "dyslipidemia and gastroesophageal reflux disease (GERD)." Tr. 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. Next, the ALJ determined that during the relevant period:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently handle and finger with both upper extremities. The claimant can frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights, and occasionally work with moving mechanical parts and with operating a motor vehicle. The claimant can perform simple, routine tasks, and perform simple work-related decisions. The claimant can occasionally interact with supervisors and coworkers, and never with the public. When dealing with changes in a work setting, the claimant can make simple work-related decisions.

Tr. 20. At step four, the ALJ determined that Plaintiff was unable to perform any work as an intensive nurse at a hospital. Tr. 24. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert ("VE"). Tr. 24-25. The VE

testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: price marker, small parts assembler and routing clerk. Tr. 25. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled. *Id*.

## IV.    LEGAL ANALYSIS

Plaintiff argues that the ALJ erred at step three of the sequential process. Specifically, Plaintiff claims that the ALJ erred in concluding she did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing 12.06"). ECF No. 12 at 18. The Commissioner responds asserting that Plaintiff did not provide sufficient medical evidence to demonstrate she met or equaled Listing 12.06, and thus failed to meet her burden at step three. ECF No. 14 at 4.

At step three, an ALJ determines whether a claimant has an impairment or combination of impairments that meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (The "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). The SSA's Listings of Impairments describes, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity[.]" 20 C.F.R. § 404.1525(a). If the ALJ finds that an impairment meets or equals a listing, the ALJ must find that the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). To meet the criteria of a listing, a plaintiff's impairment must satisfy all the duration and objective medical requirements. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a [plaintiff] to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3). Plaintiff bears the burden of production and persuasion at step three with respect

to her mental impairments. *See Baez v. Comm'r of Soc. Sec.*, 2022 WL 822331, at \*3 (D.P.R. Mar. 18, 2022).

In determining whether Plaintiff's impairments met or were medically equal to one of the listed impairments, the ALJ looked at the criteria of listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders). Tr. 19. After analyzing the evidence, the ALJ determined Plaintiff did not meet the criteria for either listing. Tr. 20. Plaintiff takes issue with the ALJ's determination as to Listing 12.06. ECF No. 12 at 18-23. For the following reasons, the ALJ properly considered all relevant evidence and applied the correct legal standards when analyzing Listing 12.06.

Listing 12.06 contemplates anxiety and obsessive-compulsive disorders. To be declared disabled under this listing, a claimant must show that she satisfies §12.06A and B or 12.06A and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. Relevant here are parts A and B, as Plaintiff argues she complies with both, but does nor argue C. Part A (2) of Listing 12.06 requires medical documentation of a panic disorder or agoraphobia, characterized by one or both of the following:

> a) Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
>
> b) Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

*Id*. Part B, on the other hand, requires an extreme limitation of one, or a marked limitation of two, of the areas of mental functioning known as the "Paragraph B" criteria. *Id*. The areas of mental functioning include the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. at §12.00F.

To determine whether Plaintiff's mental impairments satisfied Listing 12.06, the ALJ considered treating psychiatrist Bernardo B. Muñoz Ramírez, M.D.'s ("Dr. Muñoz") medical

records, consultive examiner Luis Saliceti Psy. D.'s ("Dr. Saliceti") mental examination, and state

agency consultant Jeanette Maldonado Psy. D.'s ("Dr. Maldonado") examination of Plaintiff's

medical records. Tr. 22-24. When considering medical opinions and findings, an ALJ must not

"defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [plaintiff's] medical

sources." 20 C.F.R. § 404.1520c. Instead, an ALJ must consider a series of five factors when

considering medical opinions and prior administrative medical findings, the most important of

which are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2); (c)(1)–(2) (the five

factors being supportability, consistency, relationship with the plaintiff, specialization, and other

factors). When assessing "supportability" the ALJ should find the opinion of a medical provider

more persuasive "the more relevant the objective medical evidence and supporting explanations

presented by a medical source are to support his or her medical opinion(s)[.]" 20 C.F.R. §

404.1520c(c)(1). Regarding "consistency," the ALJ shall compare the physician's opinion to the

other evidence in the record, and "[t]he more consistent a medical opinion(s) . . . is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

In the case at hand, the ALJ did not analyze 12.06A; rather she focused her analysis on

12.06B and C. *See* Tr. 23-4. However, Plaintiff maintains she complies with 12.06A and B. ECF

No. 12 at 20. This oversight in analysis by the ALJ is harmless, however, as the ALJ was correct

in her determination that Plaintiff does not meet the Paragraph B criteria; thus the decision would

have remained the same even if a 12.06A analysis was done and found to favor Plaintiff. *See Brock*

*v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (where the court affirms the ALJ's decision as no

evidence was provided that would have changed the result of the decision). However, since the

Commissioner does make arguments against Plaintiff's assertion that she meets the criteria of 12.06A, an analysis of the listing ensues.

### A. Part A of Listing 12.06

Plaintiff points to treatment records and a medical report from treating psychiatrist Dr. Muñoz outlining Plaintiff's history with panic attacks to satisfy 12.06A2(a). While Dr. Muñoz's treatment notes do include panic attacks among the detailed symptoms, Dr. Muñoz also notes that he treated Plaintiff with medication and psychotherapy, and that since that treatment, Plaintiff had not experienced any panic attacks. Dr. Muñoz, however, does note that anxiety attacks still persisted. *Id.* at 522-523, 531. The Commissioner asserts that these anxiety attacks do not meet the requirement of 12.06, as the listing requires panic attacks, not anxiety attacks. ECF No. 14 at 5.

The Listing of Impairments in the C.F.R. does not mention anxiety attacks as a possible symptom on any of the listings. *See generally* 20 C.F.R. Part 404, Subpart P, Appendix 1. In *Diskerud v. Asture*, 2009 WL 426051 (S.D. Ind. Feb. 19, 2009), plaintiff provided evidence of anxiety attacks, which the ALJ determined to be exaggerated. *Diskerud,* 2009 WL 426051 at *3, *5. However, plaintiff also testified that she suffered panic attacks, and a consulting examiner found that she suffered from a "panic disorder with intermittent panic and anxiety attacks[.]" *Id.* at *5. The court did not make any pronouncements as to any difference between these, but remanded the case to the ALJ as his conclusion was not supported by substantial evidence. In *Lavarier v. Astrue*, 2011 WL 2116412 (N.D. Ill. May 27, 2011), the court remanded a case to the ALJ for not taking anxiety attacks into consideration, but only in reference to plaintiff's RFC. *Lavarier*, 2011 WL 2116412 at *19. The ALJ had found plaintiff met 12.06A, but the record evidence clearly stated the plaintiff had panic attacks, not just anxiety attacks. *Id*. at 2-4.

Given the lack of mention of anxiety attacks in the listings, the cited case law, and the fact that Dr. Muñoz himself seems to regard panic attacks as something different to anxiety attacks, the Commissioner's argument has merits.[1] Thus, Plaintiff has failed to provide evidence of "panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.[2]

Plaintiff also argues that she satisfies 12.06A, 2(b), which states that a panic disorder or agoraphobia is characterized by disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06A, 2(b). Plaintiff argues that she complies with this subsection because she "suffers from a disproportionate fear or anxiety caused by situations like the ones she described about her last job, and her struggles with being in a large crowd or interacting with large groups of people." ECF No. 12 at 21. The situations Plaintiff alludes to are the ones Dr. Muñoz found in his evaluations. These are a "severely intense fear of not [being] able to perform her work well" and a "severely intense fear of losing a patient due to a mistake[.]" *See* Tr. 522.

The Commissioner argues that Plaintiff did not "persuasively show [] a disproportionate fear in the sort of scenarios contemplated under Part A(2)(b)." ECF No. 14 at 5. As to her fear of

---

[1] Plaintiff herself also seems to point to a difference between panic attacks and anxiety attacks, as footnote 3 of her brief asks the court to take into consideration that her panic attacks diminished to anxiety attacks once she stopped working. ECF No. 12 at 20.

[2] Even if, *arguendo*, panic attacks and anxiety attacks should be considered the same for 12.06A, 2(a) purposes, Plaintiff still fails to comply with 12.06B.

[3] The Commissioner argues that listing 12.06A, 2(b)'s "disproportionate fear or anxiety about at least two different situations" is an additional hurdle for a plaintiff claiming panic attacks. *See* ECF No. 14 at 8. This is partly incorrect. Listing 12.06A, 2 clearly states that panic disorder or agoraphobia will be found to be an anxiety disorder if "characterized **by one or both**: (a) Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; **or** (b) disproportionate fear or anxiety…" *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06A (emphasis added). This means that if a plaintiff cannot prove panic attacks, they may still prove agoraphobia by supplying medical evidence of 2(b).

being in a large crowd or interacting with large groups of people, Plaintiff points to no evidence in the record to support her claim of disproportionate fear of being in a crowd, and it is up to Plaintiff to show that she can satisfy "all of the [listings'] specified medical criteria." *Sullivan v. Zebly*, 493 U.S. 521, 530 (1990). The only evidence of any fear of interacting with people is pointed at by the ALJ in her decision when she states that "Dr. Muñoz opined that the claimant has major problems interacting with others such as peers and co-workers due to irritability[.]" Tr. 26. However, the ALJ also noted that the record "showed the claimant to be consistently cooperative and with appropriate behavior []. The claimant also alleged to go to the church, do groceries in person, get along with authority figures[.]" *Id*.

As to the fears in her previous occupation, these were work specific fears that related to her time as a nurse. ECF No. 12 at 9. Though the listed situations in 12.06A2(b) are only examples, they point towards situations that are typically encountered on a day-to-day basis (being in a line, being in open spaces, being in a crowd…). An argument could be made that being at work is "being outside of your home," however, this is not what Plaintiff argues. The situations Plaintiff argues to have a disproportionate fear of are particular to her work: "fear of not [being] able to perform her work well" and "losing a patient due to a mistake[.]" Tr. 22; ECF No. 12 at 21. Even if, *arguendo*, these kinds of situations fall within the scope of 12.06A2(b), the latter is just an extension of the former. In other words, Plaintiff's disproportionate fear would be of performing her work as a nurse because she might lose a patient if she does not perform it well. These are not "different situations" as required by the subsection, but one situation: performing her work. Since Plaintiff points to no other evidence on record to support her argument, she cannot be found to have satisfied the requirements of 12.06A2(b).

Given that Plaintiff fails to point to sufficient evidence to support her claims of meeting

listings 12.06A, 2(a) or (b), the Commissioner is correct in asserting that "Plaintiff has fallen short

of satisfying Part A of Listing 12.06." ECF No. 14 at 6.

### B.  Part B of Listing 12.06

Listing 12.06B states that a plaintiff must have an "[e]xtreme limitation of one, or [a]

marked limitation of two, of the following areas of mental functioning: … (1) Understand[ing],

remember[ing], or apply[ing] information (2) Interact[ing] with others… (3) Concentrat[ing],

persist[ing], or maintain[ing] pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06B. Plaintiff argues

the ALJ erred in her Part B analysis because she undervalued Dr. Muñoz's statements as to the

severity of her social interaction limitations. ECF No. 12 at 22. The ALJ found that Plaintiff only

had a moderate limitation in understanding, remembering or applying information. Tr. 19. She also

found Plaintiff only had a "moderate limitation" in regard to concentrating, persisting, or

maintaining pace, as well as when interacting with others. *Id*. As to adapting or managing oneself,

"[Plaintiff] has experienced a mild limitation." *Id*. The ALJ then determined that "[b]ecause the

claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme'

limitation, the 'paragraph B' criteria are not satisfied." *Id*. at 20

Plaintiff argues that Dr. Muñoz's treatment notes were underestimated, as they were

sufficient to support a finding that Plaintiff meets Listing 12.06B (2) and (3). ECF No. 12 at 21.

Plaintiff points to Dr. Muñoz's notes which state that she "is able to be engaged in limited very

emotional distant social interaction with non-family members," and that her irritability, anger,

agitation and intolerance to deal with people were not expected to change or improve with time or

treatment.  Tr. 530, 532. Moreover, according to Dr. Muñoz, Plaintiff has major problems

interacting with other people, such as peers, co-workers and acquaintances at church or work, due

to her irritability. *Id*. at 530. As to difficulties concentrating, persisting, or maintaining pace, the record states that Plaintiff lacked the ability to focus and persists in her work-related activities as an intensive nurse. *Id*. at 531

The ALJ took Dr. Muñoz's opinion into consideration, labeling it as "partially persuasive." *Id*. at 22. She based this conclusion on the fact that Dr. Muñoz's opinion on Plaintiff's social interaction limitations, although finding support on the record, was not a "function-to-function assessment with the required specificity" and that:

> [T]he record also showed the [Plaintiff] to be consistently cooperative and with appropriate behavior[.] [Plaintiff] also alleged to go to the church, do groceries in person, get along with authority figures and to never [have] been fired or suspended due to problems getting along with people. Similarly, the claimant's ability to handle funds is uncontested by herself.

 *Id*. at 22-23 (citations omitted).

The ALJ relied as well on Dr. Saliceti's mental examination of Plaintiff and Dr. Maldonado's examination assessing Plaintiff's mental limitations as a basis for her decision. *Id*. at 23. Dr. Saliceti's examination found Plaintiff to be "cooperative and attentive, sometimes polite [...] She shows feeling of frustration and feels overwhelmed and useless. Mood is anxious and depressed. She is coherent and logic[al]. Attention and concentration seem to be adequate. Memory is somewhat diminished for short term and immediate events." Tr. 225. The ALJ found Dr. Saliceti's opinion persuasive, noting that "although [Plaintiff] has social interaction limitations, she preserved cognitive and effective communication abilities." *Id*. at 23, *see also Id*. at 116-127.

As to Dr. Maldonado's examination, the ALJ determined that it was "partially persuasive in as much as they are consistent with the adopted mental residual function capacity and supported by the objective medical evidence in the record" and that the examination properly determined that

13

Plaintiff only had a "mild limitation to understand, remember, or apply information; moderate limitation to social interaction," a "moderate limitation to concentration, persistence or maintaining pace," and a "moderate limitation to adapt or manage oneself." *Id.* at 23.

The ALJ did not err in her determination that Plaintiff did not meet Listing 12.06 Part B's severity requirements. As ALJ's decision shows, the determination was based on a weighing of the evidence presented:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

Tr. 20. Taking all three opinions into consideration in reaching her determination, the ALJ adhered to correct legal standards, including the supportability and consistency requirements of 20 C.F.R. § 404.1520c, and her conclusions in step three were adopted based on the requisite substantial evidence. Plaintiff points to no evidence on the record that contradicts any of these determinations, and fails to point towards evidence that supports a finding of disability based on the criteria of listing 12.06A or B.

V.   **CONCLUSION**

Based on the foregoing analysis, the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of July 2025.

s/Marcos E. López
U.S. Magistrate Judge

14